ALEXANDER BROWNE, RELATOR, v. ORVILLE R. HAGEN, RESPONDENT.

Argued April 14, 1917—Decided May 10, 1917.

Where the incumbent of the office or position of health officer of a city brought a writ of *certiorari* to set aside a decision of the civil service commission, that another person be reinstated to the office or position, and the court of first instance fully considered the

relative rights of the two persons, deciding that the incumbent was not entitled to hold the office or position but that his opponent was, and dismissed the writ, and on appeal the appellate court affirmed the judgment of the lower court on the ground that *certiorari* was not the proper remedy, and that the most the incumbent was entitled to was a *mandamus* to the civil service commission to certify his compensation; in a subsequent proceeding to determine the right to the same office, in the same court, the doctrine of *stare decisis* will be applied, and the right to the office or position will be determined in accordance with the prior decision.

On information in the nature of *quo warranto*. On demurrer to information.

Before Justice MINTURN, by consent.

For the relator, *Ward & McGinnis*.

For the respondent, *William I. Lewis*.

The opinion of the court was delivered by

MINTURN, J. The relator in this information bases his claim to the office of health officer of the board of health of the city of Paterson upon the following facts, which are substantially conceded by the litigants: On the 10th of November, 1903, the relator was by the board of health of the city of Paterson appointed health officer, and thereupon entered upon the discharge of his duties; that on the 13th day of November, 1906, he was reappointed for the term of three years; that on the 12th of November, 1909, he was reappointed by said board of health for the term of three years and until a successor should be appointed. In 1912, owing to a dead-lock in the board of health, no appointment was made and relator continued to hold over in office.

At the general election, in November, 1912, the city of Paterson adopted the provisions of the Civil Service act of 1908, and thereafter the position of health officer was classified as being within the competitive class, and relator accordingly held said position during good behavior, and was remov-

able for cause only; that he was never at any time removed for cause, but Dr. Clay was elected to succeed him.

Relator further avers that on the 14th day of November, 1916, the said Thomas A. Clay resigned as health officer, and thereupon the said board of health at a regular meeting held on the 14th day of November, 1916, elected, or attempted to elect, and did formally declare to be elected, one Orville R. Hagen, the respondent, for an unexpired term of three years, to which they had elected, or attempted to elect, the said Thomas A. Clay; that the said Orville R. Hagen thereupon took possession of said office and has ever since been recognized by the board of health as its health officer, and is now performing, or pretending to perform, all the duties of said office.

That the said Orville R. Hagen, during the time aforesaid, has usurped, intruded into and unlawfully held, used and exercised the office, and yet does intrude into and unlawfully hold and exercise the office to the exclusion of the said J. Alexander Browne.

The information is filed under the provisions of section 4 of the *Quo Warranto* act (*Comp. Stat., p.* 4212), and may be disposed of under the provisions of the act of 1895 (*Pamph. L., p.* 82), which now appears as section 12 (*Comp. Stat., p.* 1214), which gives respondent the right to put the title of the relator in issue. The respondent has raised such issue by demurrer to the information. This was the practice followed in *Haight* v. *Love*, 39 *N. J. L.* 14, 476; *Anderson* v. *Myers*, 77 *Id.* 186; *Dunham* v. *Bright*, 85 *Id.* 391; *Civil Service Commission* v. *O'Neill, Id.* 92; *Bonynge* v. *Frank*, 89 *Id.* 239.

The claim of the relator is that by virtue of his tenure of office, as it existed upon the adoption of the Civil Service act in Paterson, he became, upon and by virtue of such adoption, vested with a tenure "during good behavior and was removable for cause only."

In determining the legal question presented by this information, I am naturally confronted with the inquiry as to what legal effect is to be attributed to the deliverance of Mr.

Justice Parker, speaking for this court in the case of *Clay* v. *Civil Service Commission,* 88 *N. J. L.* 502. That case was upon *certiorari,* and in effect determined that the relator was regularly appointed to the office in question, and that his tenure thereof was protected by the Civil Service act, and the classification made thereunder, and that as the result of such appointment and tenure, the attempted appointment of Dr. Clay to the same office was necessarily invalid. This information discloses no change in the situation presented to the court in that case, excepting the fact that the respondent claims to have succeeded by appointment to the status occupied by Dr. Clay; otherwise, the status of the parties in fact remains unchanged. The inherent difficulty in accepting the pronouncement of the Supreme Court as dispositive of the rights of the respective parties to the litigation arises not from any change in status, but entirely from the fact that the Court of Errors and Appeals upon review affirmed the result reached by the Supreme Court, but upon different grounds.

The *ratio decidendi,* in the Court of Errors and Appeals, was that the remedy invoked by *certiorari* to test the validity of the ruling of the civil service commission was inappropriate and without legal warrant; and that the utmost protection to which Dr. Clay was entitled against the alleged illegal action or inaction of the civil service commission, in refusing to certify his compensation, was a resort to the writ of *mandamus* to compel the performance of a statutory duty. *Clay* v. *Civil Service Commission,* 89 *N. J. L.* 194.

This conclusion, manifestly, left the meritorious question *inter partes* with which this court dealt untouched; and its value as a controlling precedent therefore upon this application presents the initial and fundamental difficulty which confronts me.

I am inclined, however, to accept the Supreme Court determination as finally dispositive of the rights of the parties upon this information. I must assume, in consonance with the opinion, that that court upon consideration of the facts herein presented, adjudicated the respective rights of the parties to the office in question.

The fact that the adjudication was reached through the medium of an inappropriate legal vehicle of transmission may affect its value in an appellate tribunal, but the essential value of any precedent is the cogency and applicability of its reasoning to the situation *sub judice;* for, with Coke, we must conclude *ratio legis est anima legis.* 7 *Co.* 7. Or, as expressed by a more modern commentator, "adjudged cases become precedents for future cases resting upon analogous facts, and brought within the same reason." 1 *Kent* 473.

The result is that upon the doctrine of *stare decisis,* I am of the opinion that the relator in this information is legally entitled to the possession of the office in question, and that a judgment of ouster upon this demurrer should be entered against the respondent.